UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| STEVEN MOORE,<br>    Plaintiff, | Case No. 1:20-cv-580<br>McFarland, J.<br>Litkovitz, M.J. |
| v. | |
| INTEGRA LIFESCIENCES CORP.,<br>    Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff Steven Moore brings this action against defendant Integra Lifesciences Corp. ("Integra") alleging claims for wrongful termination and negligent retention. (Doc. 3).[1] This matter is before the Court on defendant's amended motion to dismiss (Doc. 6), plaintiff's response in opposition (Doc. 8), and defendant's reply memorandum (Doc. 9).[2]

**I. Facts**

Plaintiff makes the following allegations in his complaint: Plaintiff was employed by Integra from on or about August 23, 2011 until January 10, 2020. (Doc. 3 at PAGEID 42). In "early" 2016, an individual named Dave Mitchell ("Mitchell") began working with Integra in plaintiff's department. (*Id*. at PAGEID 43). Plaintiff alleges that Mitchell "lasted in the department approximately one year until he resigned." (*Id*.). Sometime later, Mitchell "returned" to Integra in plaintiff's department. (*Id*.). Plaintiff alleges that although there were no issues between him and Mitchell, "Mitchell frequently blew up over the smallest of problems." (*Id*.).

---

[1] Plaintiff's complaint was initially filed in the Hamilton County, Ohio Court of Common Pleas. Defendant subsequently removed the action to this federal court on the basis of the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1).

[2] The Court notes that defendant filed a motion to dismiss (Doc. 5) and three days later filed an amended motion to dismiss (Doc. 6) without providing a reason why the motion was amended. Plaintiff's response in opposition (Doc. 8) responds to defendant's amended motion to dismiss. Therefore, defendant's initial motion to dismiss (Doc. 5) should be denied as moot, and this Report and Recommendation is before the Court on defendant's amended motion to dismiss (Doc. 6).

In early 2019, plaintiff alleges that Mitchell began having problems with a supervisor, James Arrowood. (*Id.*). Plaintiff alleges that he "heard rumors of Mitchell throwing chairs around the supervisors' office as he was angry with Arrowood." (*Id.*). Plaintiff did not witness this incident. (*Id.*). Mitchell left work that day, but a manager "persuaded him" to return to work several days later. (*Id.*). Plaintiff alleges that Mitchell "remained angry" and "continued to blow up at the smallest issues." (*Id.*). Plaintiff alleges that "these events gave Integra notice of Mitchell's violent propensities." (*Id.*).

Plaintiff filed a complaint with human resources regarding "Mitchell's propensity toward violence and [plaintiff's] concern for his (and others') safety." (*Id.*). Plaintiff alleges that Mitchell's "violent responses to small incidents continued through 2019." (*Id.*). Plaintiff further alleges that "six similar incidents" were caused by Mitchell. (*Id.* at PAGEID 44). Integra "never took any remedial action[.]" (*Id.*). Plaintiff alleges there were "repeated complaints" and "several resignations" caused by Mitchell's violence. (*Id.*).

On or about January 7, 2020, plaintiff asked the lead machinist to help out with a problem he had with bad parts. (*Id.*). Plaintiff alleges that he knew it was Mitchell who "messed up the parts," but plaintiff did not tell this to the lead machinist. (*Id.*). Plaintiff alleges that twenty minutes later, Mitchell "accosted" plaintiff. (*Id.*). Plaintiff tried to calm down Mitchell. (*Id.*). Plaintiff alleges that Mitchell "grabbed [plaintiff] by the throat and began to strangle him." (*Id.*). Plaintiff "knocked" Mitchell away. (*Id.*). An employee, Joshua Duffey, told Mitchell to leave. (*Id.*). Duffey brought Mitchell to a supervisor and reported the situation to human resources. (*Id.*). Plaintiff alleges that human resources "then evidently took the report to corporate." (*Id.*).

The following day, plaintiff returned to work and saw that Mitchell was still working. (*Id.*). Plaintiff told his manager that he "could not work in an unsafe environment caused by

coworkers." (*Id*. at PAGEID 44-45). The next day, plaintiff told his manager that he intended to look for a new job "because Integra refused to keep him reasonably safe at work." (*Id*. at PAGEID 45). On January 10, 2020, Integra terminated plaintiff's employment "citing the zero-tolerance fighting policy." (*Id*.). Plaintiff alleges that "Integra could have prevented the entire situation, but instead of taking remedial action against Mitchell early on, it allowed Mitchell to attempt to strangle [plaintiff] at work." (*Id*.).

## II. Standard of Review

Defendant moves the Court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. 6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

*Ashcroft*, 556 U.S. 662, 678. "Put another way, bare assertions of legal conclusions are not sufficient." *Sollenberger*, 173 F. Supp. 3d at 618. And, "[t]o survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough." *Id*. at 617.

The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

### III. Resolution

#### A. Wrongful Termination (Count I)

##### 1. Jeopardy element of public policy claim

In his first cause of action, plaintiff presents a wrongful termination in violation of public policy claim against Integra under Ohio Rev. Code §§ 4101.11 and 4101.12. (Doc. 3 at PAGEID 46). In support of this cause of action, plaintiff alleges that he repeatedly made reports to Integra about unethical, unlawful, and policy-violating behavior in the workplace, including the unsafe work conditions caused by Mitchell. (*Id*.). Plaintiff further alleges that Integra's termination of his employment jeopardized the public policies under Ohio Rev. Code §§ 4101.11 and 4101.12, and Integra had no overriding business justification for terminating his employment. (*Id*.).

Defendant alleges that plaintiff fails to establish the "jeopardy" element of his public policy claim because plaintiff did not give notice to defendant that he was vindicating a

4

governmental policy by filing his complaint with human resources. (Doc. 6 at PAGEID 73-74). Defendant also alleges that plaintiff fails to plead specific facts that defendant did not have an overriding business justification for terminating plaintiff's employment. (*Id*. at PAGEID 75).

The common law doctrine of employment-at-will traditionally governs employment relationships in Ohio, which "permits an employer to terminate an at-will employment relationship 'for any cause, at any time whatsoever, even if done in gross or reckless disregard for [an] employee's rights.'" *Allman v. Walmart, Inc.*, No. 2:18-cv-369, 2019 WL 529572, at * 2 (S.D. Ohio Feb. 11, 2019) (citing *Plona v. United Parcel Serv., Inc.*, 558 F.3d 478, 481 (6th Cir. 2009)), *aff'd*, 967 F.3d 566 (6th Cir. 2020). Nevertheless, "an exception to Ohio's employment-at-will doctrine is available to employees when they have been discharged in violation of public policy." *Allman*, 2019 WL 529572 at * 2. *See Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981, 986 (Ohio 1990), *overruled in part on other grounds*, *Tulloh v. Goodyear Atomic Corp.*, 584 N.E.2d 729 (Ohio 1992). In order to maintain a common-law claim for wrongful termination in violation of Ohio public policy, a plaintiff must allege:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Jermer v. Siemens Energy & Auto., Inc.*, 395 F.3d 655, 656 (6th Cir. 2005) (emphasis in original) (citing *Collins v. Rizkana*, 652 N.E.2d 653, 657-58 (Ohio 1995)). "[T]he first two elements are questions of law while the latter two are questions of fact." (*Id*.).

Defendant argues that plaintiff's complaint fails to plausibly alleges the jeopardy element of his public policy claim under the Sixth Circuit standard set forth in *Jermer*, which "requires a court to determine whether it is 'sufficiently clear from the employee's statement that he is invoking governmental policy [so] that a reasonable employer would understand that the employee relies on the policy as the basis for his complaint.'" (Doc. 6-2 at PAGEID 72, citing *Jermer*, 395 F. 3d 655, 656). Defendant contends that plaintiff pleads no facts showing that he put his manager or human resources on notice that he was vindicating a governmental policy by complaining about Mitchell's allegedly violent propensities, and plaintiff's expressed concerns about his personal safety within the workplace are insufficient under *Jermer*.

In *Jermer*, the Sixth Circuit held that to succeed on the "jeopardy" element of a public policy claim, the employee "must at least give the employer clear notice that the employee's complaint is connected to a governmental policy. It must be sufficiently clear from the employee's statement that he is invoking governmental policy that a reasonable employer would understand that the employee relies on the policy as the basis for his complaint." *Id*. at 656. "Otherwise, the employer is not effectively put on notice that the employee is acting not only for himself, but also for the public at large." *Id.* at 659. While an employee "need not cite any specific statute or law, his statements must indicate to a reasonable employer that he is invoking governmental policy in support of, or as the basis for, his complaints." *Id*.

The plaintiff in *Jermer* brought a wrongful discharge claim under public policy against his employer claiming that he was discharged "in retaliation for raising complaints about the air quality at the employer's facility in Ohio." *Jermer*, 395 F.3d at 655. The plaintiff, in discussing the air quality issue with his supervisor, raised concerns about his own health and the health of a co-worker with a cough. The Sixth Circuit held that the plaintiff failed to prove the "jeopardy"

6

element of his public policy claim because the plaintiff did not "indicate that he was invoking a governmental policy in favor of workplace safety." *Id*. at 659. The Court of Appeals determined that (1) the plaintiff's "off-the-cuff statement[s]" to his supervisor that he "still thinks there's issues" with outstanding air quality projects, and (2) his request for an air filter for his work space in response to his own sinus irritation and the cough of a co-worker were insufficient to "rise to the level of a complaint about possible violation of a governmental policy" in favor of workplace safety. *Id*.

In a subsequent case, the Sixth Circuit emphasized its admonition in *Jermer* that an employee need not cite to a specific provision of the law in invoking a governmental policy favoring workplace safety:

> The *Jermer* court made clear that a specific statement by an employee describing in detail the government policy being violated is not necessary for an employee to bring a *Greeley* claim. This Court found that Jermer's request for an air filter was insufficient because it merely indicated Jermer's preference, and his off-hand statement that there were still issues with the air was vague. *Jermer,* 395 F.3d at 659. The court likened Jermer's statements "to a request to turn the air conditioner or heat up or down. . . . It does not assert or in any reasonable way indicate that an employee is acting to protect 'public policy.'" *Id.* at 659-60. However, the *Jermer* court noted that "an employee need not cite a specific statute or law." *Id.* at 659. Instead, the employee's "statements must indicate to a reasonable employer that he is invoking governmental policy in support of, or as the basis for, his complaints." *Id.* at 659.

*Avery v. Joint Twp. Dist. Me'll Hosp.*, 286 F. App'x 256, 265 (6th Cir. 2008).

Courts that have applied the *Jermer* standard for analyzing claims grounded in Ohio's public policy have noted that concerns expressed for an individual's personal safety are insufficient to establish the jeopardy element of a public policy claim based on workplace safety. In *Allman*, this Court addressed whether the plaintiff established the jeopardy element of his wrongful discharge claim against his employer under Ohio's public policy. *Allman*, 2019 WL 529572 at *2. The plaintiff's employer required the plaintiff to wear a C-PAP machine as a

7

condition of his continued employment. *Id*. at *1. The plaintiff "made several statements" to his employer that, among other things, the machine was painful and caused injury to him. *Id*. The plaintiff's employer suspended the plaintiff for refusing to wear the C-PAP machine. *Id*. The plaintiff eventually resigned and alleged that his resignation was a "constructive discharge." *Id*. On appeal, the employer argued that the plaintiff failed to prove the "jeopardy" element of his public policy claim because the employer was not put on notice that the plaintiff was invoking a governmental policy as the basis of his complaint. *Id*. at *3. Relying on *Jermer*, the Court agreed, holding:

> [The plaintiff's] statements to [his employer] and its vendors were insufficient to put [his employer] on notice that he was relying on Ohio's statutory policies in favor of workplace safety in refusing to use the C-PAP machine, and not simply acting in his own self-interest. [The plaintiff's] complaints undoubtedly put [his employer] on notice that [the plaintiff] found the C-PAP machine painful and detrimental to his health, but none of his complaints as alleged raise the specter of workplace safety, let alone a governmental policy in favor of workplace safety that [the plaintiff] believed had been violated. In accordance with *Jermer's* binding precedent, this Court must conclude that [the plaintiff] has failed to satisfy the jeopardy element, and thus has failed to state a claim for wrongful discharge in violation of public policy.

*Id*. at *5. *See also McCartney v. Marten Transp. Ltd*., No. 3:18-cv-538, 2018 WL 3641751, at *4-5 (N.D. Ohio Aug. 1, 2018) (statements of concern for personal safety resulting from verbal threats by co-worker not sufficiently clear that employee was invoking governmental policy in favor of workplace safety); *Harmon v. Johnson Controls, Inc*., No. 3:15-cv-00693, 2016 WL 54650 (N.D. Ohio Jan. 5, 2016) (same); *Hernandez v. Pitt Ohio Exp., LLC*, No. 3:11-cv-1507, 2012 WL 3496860, at *3 (N.D. Ohio Aug. 14, 2012) (truck driver who was instructed to work in excessive heat "informed the dispatcher that it was too hot, and that the conditions were unsafe as a result" expressed only a concern regarding his personal safety and did not in any way indicate he was invoking workplace safety policy); *Aker v. New York and Co., Inc*., 364 F. Supp.

8

2d 661, 665-66 (N.D. Ohio 2005) (store manager's expression of concern for her personal safety resulting from store's shoplifting policy insufficient to satisfy jeopardy element); *Beckloff v. Amcor Rigid Plastics USA, LLC*, 93 N.E.3d 329, 340-41 (Ohio Ct. App. 2017) (holding that employee's complaint that he feared an altercation with his "outwardly hostile supervisor" did not satisfy the jeopardy element because he never put his employer "on notice that he was attempting to invoke a governmental policy and not simply his own self-interest").

In contrast to the cited cases above where the plaintiff-employee complained about actions relating to his or her own personal safety, plaintiff here alleges sufficient facts to plausibly satisfy the jeopardy element of his public policy claim. Liberally construing the facts alleged in the complaint, plaintiff alleges that prior to filing his complaint with HR, there were numerous verbal and physical actions taken by Mitchell within the department where they both worked, including an incident where Mitchell allegedly threw chairs in his supervisor's office, which indicated Mitchell's propensity for violence. Plaintiff thereafter filed a complaint with the HR department about Mitchell's propensity towards violence and plaintiff's concern for the safety of himself and others. (Doc. 3, ¶ 24).[3] Unlike the cases above, none of Mitchell's actions at that point were directed solely toward plaintiff, and plaintiff's complaint to HR included his expressed concern for the safety of others in the workplace. Some of plaintiff's complaints about Mitchell's actions made after his physical altercation with Mitchell may suggest plaintiff was expressing a concern for his own personal safety. However, when read in the context of the entire complaint, including plaintiff's earlier complaint to HR about Mitchell's violent

---

[3] Defendant appears to call into question whether plaintiff's complaint to HR actually expressed a concern for other co-workers because of his use of parentheses around the term "(and others')" in ¶ 24 of the complaint. However, in a motion to dismiss, the Court must accept as true plaintiff's factual allegations and make reasonable inferences in favor of plaintiff as the non-moving party. *Keys*, 684 F.3d at 608. For purposes of the pending motion, the Court accepts as true that plaintiff's complaint to HR included concerns about the safety of others. The reasonable inference that follows is that plaintiff notified defendant through this complaint about issues concerning workplace safety.

propensities and concerns for his safety and the safety of others, plaintiff's complaint plausibly alleges facts from which the Court may reasonably infer that plaintiff was raising concerns about the workplace safety of all employees in his department, and not concerns related solely about his personal safety. Under these facts, a reasonable employer would be put on notice that there was an underlying statutory or public policy reason behind plaintiff's complaint to HR, i.e., workplace safety given Mitchell's violent propensities within the workplace. Plaintiff's complaint, liberally construed, put Integra on notice that he was "invoking a governmental policy as the basis for his complaint, not just his own self-interest." *Jermer*, 395 F.3d at 659. Whether this is ultimately born out by the evidence is not an issue for the Court at this juncture. Plaintiff has alleged sufficient facts that he complained to defendant about Mitchell's actions relating to workplace safety that should have reasonably placed defendant on notice that plaintiff was not merely invoking concerns about his own safety, but more broadly to include the safety of his co-workers in the department. In looking at the facts in the light most favorable to plaintiff, plaintiff satisfies the jeopardy element of his public policy claim. Defendant's motion to dismiss on this basis should be denied.

### 2. Adequate remedy

Citing *House v. Iacovelli*, 152 N.E.3d 178 (Ohio 2020), defendant alleges that plaintiff fails to satisfy the jeopardy element of his wrongful termination claim because Ohio Rev. Code §§ 4101.11 and 4101.12 provide an adequate remedy to plaintiff. (Doc. 6 at PAGEID 74, 75). In *House*, a former employee brought suit claiming wrongful termination in violation of public policy under multiple provisions in Ohio Rev. Code Chapter 4141. The plaintiff was fired shortly after she approached the restaurant's operator regarding the accuracy of its payroll reporting to the Bureau of Unemployment Compensation. *Id.* at 180. The Ohio Supreme Court

held that the employee's termination did not jeopardize the public policy concerning the accurate reporting of employee wages under Chapter 4141. The Court noted that the various statutory provisions under which the plaintiff sued provided remedies that discourage employers from inaccurately reporting, including monetary forfeiture (Ohio Rev. Code § 4141.20(B)), a civil action against the employer brought by the attorney general (Ohio Rev. Code § 4141.27), and fines and criminal penalties (Ohio Rev. Code § 4141.99). The *House* court noted that these statutory remedies, which do not include a personal remedy for a dismissed employee, "adequately discourage the employer's wrongful conduct and are sufficient to protect society's interests in ensuring that employers accurately report employees' pay and tips to the Bureau of Unemployment Compensation." *Id*. at 182 (citing *Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 42-43 (Ohio 2007)).

The Ohio Supreme Court distinguished its previous wrongful termination in violation of public policy cases in which the court examined "whether the statutory scheme contains a *sufficient personal remedy* for the aggrieved employee." *Id*. (citing *Leininger*, 875 N.E.2d at 40, in turn citing *Livingston v. Hillside Rehab. Hosp.*, 680 N.E.2d 1220 (Ohio 1997)) (emphasis added). The court stated that it "has focused only on the existence of a personal remedy for the employee in circumstances that involved public policies that protect substantial rights of the employee." *Id.* (citing *Wiles v. Medina Auto Parts,* 773 N.E.2d 526, 532-33 (Ohio 2002) (Family and Medical Leave Act, 29 U.S.C. 2601 et seq.); *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308 (Ohio 1997) (Occupational Safety and Health Act ("OSHA"), 29 U.S.C. 651 et seq.); *Pytlinski v. Brocar Prods., Inc.*, 760 N.E.2d 385 (Ohio 2002) (OSHA); *Leininger*, 875 N.E.2d 36 (age discrimination); *Collins v. Rizkana*, 652 N.E.2d 653 (Ohio 1995) (sexual harassment and discrimination); *Bickers v. W. & S. Life Ins. Co.*, 879 N.E.2d 201 (Ohio 2007) (workers'

11

compensation)). The public policy recognized in those cases, "which specifically protect *employees*," was unlike the public policy in the instant case which protects "a particular *governmental* interest: the accurate reporting of employees' wages to the Bureau of Unemployment Compensation." *Id*. (emphasis added). The *House* court determined that "[t]he lack of a personal remedy in the statutory scheme does not jeopardize the policy because the remedies contained in the statute sufficiently protect society's interest and discourage employers from engaging in the prohibited behavior." *Id*.

Defendant contends that the fines set forth in Ohio Rev. Code § 4101.99, like the penalties provided under Chapter 4141 in *House*, provide an adequate remedy for a violation of Ohio Rev. Code §§ 4101.11 and 4101.12. The Court disagrees.

Unlike the statutes in *House*, which protect specific *governmental* interests, plaintiff's wrongful termination cause of action in this case is based on violations of Ohio Rev. Code §§ 4101.11 and 4101.12, which protect the safety of *employees* and those who frequent an employer's business. Section 4101.11 provides in relevant part:

> Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, . . . and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

Section 4101.12 provides in relevant part:

> No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and [n]o employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. . . .

The protections for employees set forth in sections 4101.11 and 4101.12 are similar to the public policies recognized in *Kulch, Collins, Wiles, Leininger, and Bickers*, which specifically protect the substantial rights of employees. Given the distinction drawn by the Ohio Supreme Court in

*House* between public policy which favors a governmental interest and public policy that "protect[s] the substantial rights of the employee," the fines set forth in § 4101.99 for an employer's violation of these statutes do not, in this Court's view, provide the sufficient personal remedy for an aggrieved employee and are insufficient to protect society's interest in furthering workplace safety. *Cf. Jenkins v. Cent. Transp., Inc.*, No. 09-cv-525, 2010 WL 420027, at *11 (N.D. Ohio Jan. 29, 2010) (examining availability of remedies in the context of a fraudulent joinder analysis and stating that "[n]either Ohio Rev. Code § 4101.11 nor § 4101.12 provide any statutory remedies."). For these reasons, and because Integra has not cited any authority that clearly establishes that Ohio Rev. Code §§ 4101.11 and 4101.12 provide an adequate remedy to plaintiff, defendant's motion to dismiss on this basis should be denied.

### 3. Business justification

In order to maintain a common-law claim for wrongful termination in violation of Ohio public policy, plaintiff must also allege that defendant lacked an overriding legitimate business justification for the dismissal. *Jermer*, 395 F.3d at 656. Defendant contends that plaintiff fails to allege facts supporting his conclusion that Integra had no overriding business justification for terminating plaintiff's employment. (Doc. 6 at PAGEID 75-77). Construing plaintiff's "complaint in the light most favorable to the plaintiff [and] accept[ting] all well-pled factual allegations as true," *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 790 (6th Cir. 2012), plaintiff has pled sufficient facts alleging defendant lacked an overriding legitimate business justification for terminating his employment. Plaintiff alleges that he made numerous complaints about Mitchell's violent tendencies, and shortly after his complaint concerning Mitchell's physical assault on plaintiff, Integra terminated plaintiff's employment. Whether plaintiff was fired for violating Integra's "zero tolerance fighting policy" or in retaliation for his

13

complaints about workplace safety cannot be resolved on a motion to dismiss. *See Collins*, 652 N.E.2d at 658 (whether there was an overriding legitimate business justification for employee's dismissal is an issue of fact for the jury). Plaintiff has alleged enough facts to withstand defendant's challenge in this regard. Defendant's motion to dismiss on this basis should be denied.

### B. Negligent Retention (Count II)

In his second cause of action, plaintiff presents a negligent retention claim against Integra. (Doc. 3 at PAGEID 47). In support of this cause of action, plaintiff alleges that while both were working within their scope of employment, Mitchell physically assaulted plaintiff. (*Id*.). Plaintiff alleges that Integra, the employer of Mitchell and plaintiff, knew that Mitchell had engaged in physical violence against plaintiff and other employees because Moore and other employees had reported Mitchell's violent acts to Integra. Despite knowledge of Mitchell's violent behavior towards other employees, Integra retained Mitchell as an employee. (*Id*.). Plaintiff alleges that Integra's negligent retention of Mitchell was the proximate cause of plaintiff's injuries. (*Id*.).

Defendant argues that plaintiff's negligent retention claim should be dismissed because it is barred and pre-empted by the Ohio Workers' Compensation Act. (Doc. 6 at PAGEID 70-71). Defendant argues that because plaintiff alleges he was physically assaulted by another employee while both were working within the scope of their employment, plaintiff's "workplace injury" was "compensable only through the Ohio Workers' Compensation Act, if at all." (*Id*. at PAGEID 70). The Court agrees.

The Ohio Workers' Compensation Act provides, in relevant part, that "[e]mployers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at

14

common law or by statute for any injury . . . by any employee *in the course of or arising out of his employment. . . .*" Ohio Rev. Code § 4123.74 (emphasis added). *See* Ohio Rev. Code § 4123.01(C) (Ohio Workers' Compensation Act provides benefits for injuries "received in the course of, and arising out of, the injured employee's employment"). Under Ohio law, "[i]n workers' compensation cases concerning fights and assaults during work hours at the place of employment, Ohio courts have consistently focused on two factors: (1) if the origin of the assault was work-related; and (2) if the claimant was not the instigator. The injury is compensable [under the Ohio Workers' Compensation Act] only if both findings are made." *Garner v. Bureau of Workers' Comp.*, 118 N.E.3d 479, 483 (Ohio Ct. App. 2018) (internal quotations and citations omitted).

Here, plaintiff alleges that "Mitchell physically assaulted Moore *while both were working within the scope of their employment*." (Doc. 3 at PAGEID 47) (emphasis added). It is also undisputed that plaintiff was not the "instigator" of the assault. (*Id*. at PAGEID 44, 45, 47). *See Lowe v. Cox Paving, Inc.*, 941 N.E.2d 88 (Ohio Ct. App. 2010) (where the court held the plaintiff could not recover under the Ohio Workers' Compensation Act because the plaintiff instigated the fight by shoving his co-employee at the beginning of the argument). Therefore, it is clear to the Court that plaintiff suffered an injury in the course of or arising out of his employment.

In plaintiff's response in opposition to defendant's amended motion to dismiss, plaintiff ignores the language in his own complaint seeking damages for "physical injury" (Doc. 3 at PAGEID 48) by claiming, for the first time, that he seeks no recovery for, and "alleges no injury as a result of the attack." (Doc. 8 at PAGEID 98).[4] The Court finds that plaintiff's complaint is

---

[4] Plaintiff also alleges that the Ohio Workers' Compensation Act is inapplicable to his claim because his injury was "suffered as a result of an intentional tort by Integra and Mitchell, which are claims outside the Workers' Compensation system." (Doc. 8 at PAGEID 98). Moore did not allege an Intentional Tort cause of action in his complaint and therefore, plaintiff's argument that the Ohio Workers' Compensation Act "is immune from suits

15

clear, unambiguous, and unquestionably seeks damages to compensate plaintiff for, among other things, "physical injury" arising from his workplace injury. (Doc. 3 at PAGEID 48). Although plaintiff's memorandum in opposition alleges the contrary, plaintiff has not amended his complaint to omit any claims seeking damages for physical injury and "may not amend his complaint through a brief in response to a motion to dismiss." *Gamino-Ramirez v. Hoornstra*, No. 1:16-cv-1141, 2018 WL 10394898, at *4 (W.D. Mich. Feb. 22, 2018) (citing *Johnson v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 502 F. App'x 523, 541-42 (6th Cir. 2012) ("Although Plaintiffs' response to the motion to dismiss expanded their disparate impact claims, the district court was limited, as are we, to the facts and legal claims as raised in the pleadings.") (citing Moore's Federal Practice § 12.34. ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")). *See also Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("If plaintiffs believe that they need to supplement their complaint with additional facts to withstand a motion for judgment on the pleadings (or a motion to dismiss), they have a readily available tool: a motion to amend the complaint under Rule 15. *See* Fed. R. Civ. P. 15(a). Plaintiffs cannot, . . . amend their complaint in an opposition brief. . . .") (citations omitted); *Hill v. Ohio State Univ. T & L*, No. 2:12-cv-984, 2013 WL 2295957, at *3 (S.D. Ohio May 24, 2013) ("A plaintiff cannot salvage an insufficient complaint by attempting de facto amendment of that pleading via a response brief to a motion to dismiss.") (citations omitted). Accordingly, because plaintiff's complaint pursues damages for physical injury arising out of an injury that was suffered in the course of or arising out of plaintiff's employment, the

---

alleging injuries caused by intentional torts of coworkers" (*Id*. at PAGEID 99) is without merit and contrary to the factual allegations and causes of action as stated in plaintiff's complaint.

16

Ohio Workers' Compensation Act is plaintiff's exclusive remedy. The Court recommends that defendant's motion to dismiss plaintiff's negligent retention claim should be granted.

### IV. Conclusion

Based on the foregoing, it is **RECOMMENDED** that:

1. Defendant's motion to dismiss (Doc. 5) should be denied as moot;

2. Defendant's amended motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. 6) should be **GRANTED** in part and **DENIED** in part.

   a. Defendant's motion to dismiss Count I of plaintiff's complaint, Wrongful Termination in Violation of Public Policy, should be **DENIED**; and

   b. Defendant's motion to dismiss Count II of plaintiff's complaint, Negligent Retention, should be **GRANTED.**

Date: 1/27/2021

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

STEVEN MOORE,  
    Plaintiff,

v.

INTEGRA LIFESCIENCES CORP.,  
    Defendant.

Case No. 1:20-cv-580  
McFarland, J.  
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).